IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROGER LYNN TABB and SANDRA SCOTT
TABB,

                    Plaintiffs,

      v.

ONE WEST BANK, FSB; REGIONAL TRUSTEE
SERVICES CORPORATION; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.; IMPAC FUNDING CORPORATION d/b/a
IMPAC LENDING GROUP; US BANK, N.A.;
INDYMAC FEDERAL BANK, F.S.B; *Et al.*,

                  Defendants.

3:10-cv-855-ST

FINDINGS AND
RECOMMENDATIONS

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiffs, Roger Lynn Tabb and Sandra Scott Tabb, appearing *pro se*, filed this action on July 21, 2010, alleging a claim for "Trespass on the Case" against various financial institutions and their chief executive officers. The named defendants were: One West Bank ("One West") and its CEO, Terry Laughlin ("Laughlin"); Regional Trustee Services Corporation ("Regional") and its CEO, Chris Rebhuhn ("Rebhuhn"); Mortgage Electronic Registration Systems, Inc. ("MERS") and its CEO, R. K. Arnold ("Arnold"); and Impac Funding Corporation ("Impac") and its CEO Joseph R. Tomkinson ("Tomkinson").

Plaintiffs contended that defendants committed fraud by claiming to be creditors with respect to the foreclosure of a Deed of Trust dated July 8, 2006, regarding real property located in Multnomah County, Oregon, to secure a Note signed by plaintiffs in the sum of $404,000.00. As a result, plaintiffs sought return of the Note and Deed of Trust, $2 million in punitive damages, $619,2000 for loss of earnings, costs and attorney fees, and treble damages.

On January 31, 2011, this court granted various motions filed by defendants and dismissed with prejudice the claims against Tomkinson and dismissed without prejudice the claims against One West, Laughlin, Regional, Rebhuhn, MERS, Arnold, and Impac. Order (docket #91), adopting Findings and Recommendations (docket #85).

On February 28, 2011, plaintiffs filed their First Amended Complaint ("FAC") (docket #102). The FAC again names One West, Regional, MERS, and Impac as defendants and adds

"US Bank, N.A." ("US Bank")[1] and IndyMac Federal Bank, F.S.B.[2] ("IndyMac") as new defendants.  The FDIC has now been substituted as the Receiver for IndyMac (docket #138). The FAC alleges the following claims:  (1) fraud in the inducement (First Claim); (2) wrongful attempted foreclosure ("No entity exists today with the right to Foreclose on Roger Lynn Tabb and Sandra Scott Tabb's real property") (Second Claim); (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 USC §§ 1601, 1692 *et seq*; (Third Claim); (4) unjust enrichment ("Defendants received pecuniary gain from a loan Plaintiff never received") (Fourth Claim); (5) preliminary injunction (Fifth Claim); and (6) quiet title (Sixth Claim).

Now before the court are a second round of motions to dismiss, including:

(1) Impac's and Tomkinson's Motions to Dismiss Plaintiffs' First Amended Complaint (docket #104);

(2) One West's and MERS's Motion to Dismiss First Amended Complaint (docket #107);

(3) US Bank's Joinder in Motion to Dismiss First Amended Complaint filed by One West and MERS (docket #117); and

(4) FDIC's Motion to Dismiss and Joinder in Other Motions to Dismiss (docket #128).

In the meantime, plaintiffs filed a Motion for Entry of Default Judgment against US Bank and IndyMac (docket #114).

Plaintiffs invoke federal question jurisdiction under 28 USC § 1331 (FAC, ¶ 14), presumably based on their Third Claim alleging a violation of the FDCPA, as well as on diversity

---

[1] US Bank indicates that its correct name is "U.S. Bank National Association."  Joinder in Motion to Dismiss First Amended Complaint (docket #117), p. 1.

[2] On May 5, 2011, The Federal Deposit Insurance Corporation ("FDIC") filed a Motion to Substitute FDIC as Receiver for IndyMac Federal Bank, FSB (docket #122).

3 - FINDINGS AND RECOMMENDATIONS

jurisdiction under 28 USC § 1332 (FAC, ¶ 17).  Plaintiffs are Oregon citizens.  FAC, ¶ 1.  The

FAC alleges that the six corporate defendants are corporations of states other than Oregon.  *Id*,

¶¶ 2, 4, 6, 8, 10, 12.  The amount in controversy exceeds $75,000.00, exclusive of interest and

costs.  Thus, this court has both federal question and diversity jurisdiction pursuant to 28 USC

§§ 1331-32.

For the following reasons, defendants' motions to dismiss should be granted and all

claims should be dismissed with prejudice against all defendants.  Accordingly, plaintiff's

motion for default should be denied as moot.

## STANDARDS

In order to state a claim for relief, a pleading must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief[.]"  FRCP 8(a)(2).  This standard "does not

require 'detailed factual allegations,'" but does "demand[] more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S Ct 1937, 1949 (2009),

citing *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007).  "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*,

quoting *Twombly*, 550 US at 555.  In order to survive a motion to dismiss for failure to state a

claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Id*, quoting *Twombly*, 550 US at

570.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as

true and construe those allegations in the light most favorable to the non-moving party.  *North*

*County Cmty. Alliance, Inc. v. Salazar*, 573 F3d 738, 741-42 (9th Cir 2009), *cert denied*, 130 S Ct

2095 (2010).  In addition to the allegations of the complaint, the court may also consider

documents whose authenticity no party questions which are attached to, or incorporated by

reference into, the complaint, as well as matters capable of judicial notice.  *Coto Settlement v.*

*Eisenberg*, 593 F3d 1031, 1038 (9th Cir 2010) (discussing "doctrine of incorporation by

reference"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F3d 981, 990 (9th Cir 2009); *Outdoor*

*Media Group, Inc. v. City of Beaumont*, 506 F3d 895, 900-01 (9th Cir 2007).  The court need not

accept as true allegations in the complaint that contradict these sources.  *Lazy Y Ranch, Ltd., v.*

*Behrens*, 546 F3d 580, 588 (9th Cir 2008) (citations omitted).

However, *pro se* pleadings are held to a less stringent standard than those drafted by

lawyers.  *See Haines v. Kerner*, 404 US 519, 520 (1972).  Specifically, a *pro se* litigant is

entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the

complaint's deficiencies cannot be cured by amendment.  *See Noll v. Carlson*, 809 F2d 1446,

1448 (9th Cir 1987).  Before dismissing a *pro se* complaint, the court must, in many

circumstances, instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave

to amend.  *See Eldridge v. Block*, 832 F2d 1132, 1136 (9th Cir 1987).  Nevertheless, a *pro se*

plaintiff's claims may be dismissed where it appears beyond doubt that the plaintiff can prove no

set of facts in support that would entitle him to relief.  *Barrett v. Belleque*, 554 F3d 1060, 1061

(9th Cir 2008).

## **ALLEGATIONS**

The FAC is somewhat difficult to decipher but again centers on the dispute concerning an

attempted foreclosure of the Deed of Trust executed by plaintiffs in July 2006.  The FAC is

accompanied by plaintiffs' Memorandum in Support of First Amended Complaint for Fraud,

Preliminary Injunction, and Quiet Title (docket #103), which primarily discusses their contention that One West lacks standing to conduct a non-judicial foreclosure. The FAC also attaches voluminous exhibits. In addition, the record includes submissions of copies of public documents of which this court may take judicial notice. Piecing this information together leads to the following chronology.

To purchase real property in Multnomah County, plaintiffs borrowed $404,000.00 from Impac and signed an Adjustable Rate Note ("Note") in that amount on July 7, 2006. FAC, Ex. 9 (Complaint, Ex. D). To secure payment of that Note, on July 8, 2006, plaintiffs also signed a Deed of Trust naming Impac as the lender, Ticor Title Insurance Company as the trustee, and MERS "as a nominee for Lender and Lender's successors and assigns" and as "the beneficiary." *Id*, Ex. 1 (Complaint, Ex. C).

On October 14, 2009, MERS, as nominee for Impac, assigned the Deed of Trust to One West "[t]ogether with the Note or Notes therein described or referred to." FAC, Ex. 5, p. 1 (Ex. U (docket #33), pp. 24-25) (Assignment of Deed of Trust, recorded October 20, 2009).[3] That same day, One West appointed Regional as the successor trustee under the Deed of Trust. FAC, Ex. 2 (Ex. A (docket #15-1)) (Appointment of Successor Trustee, recorded October 21, 2009). On October 20, 2009, Regional issued a Notice of Default and Election to Sell based on plaintiffs' default by failing to make payments due since July 1, 2009, in the sum of $6,557.71. Ex. B (docket #15-1); Ex. U (docket #33), pp. 21-22. That Notice referred to MERS as nominee for Impac as the beneficiary and made no reference to One West. Shortly thereafter on

_____

[3] One West appears to be the loan servicer for US Bank.

October 22, 2009, Regional issued a Trustee's Notice of Sale, setting a foreclosure sale on

February 24, 2010 (Trustee's Sale #09-FMB-85474).  That notice stated that the "beneficial

interest under said Trust Deed and the obligations secured thereby are presently held by

ONEWEST BANK, FSB."

Plaintiffs apparently responded to the Trustee's Notice of Sale on December 24, 2009,

with a "Cease and Desist Foreclosure Sale Notice."  FAC, Ex. 8 (Complaint, Ex. H).  In addition,

on January 26, 2010, plaintiffs executed both a "Notice of Removal / Actual and Constructive

Notice" purporting to rescind any authority granted by plaintiffs to Regional, MERS, One West,

IndyMac, Ticor, or Impac (Complaint, Ex. M) and a "Notice of Right to Cancel" notifying those

same six entities that plaintiffs were exercising their "Three Day Right to Cancel" under the

Truth in Lending Act ("TILA"), 15 USC § 1601, *et seq*, and 12 CFR Part 226, offering to

"forgive" their wrongdoing if those entities "rightfully forgive [plaintiffs] the full amount of deed

of trust/credit," making a "one time demand of $900,000 from One West Bank," and demanding

that defendants "also immediately remove any/all negative comments on Borrower's credit report

attributed to this transaction." Complaint, Ex. N.

On April 22, 2010, Regional issued a Rescission of Notice of Default, referring to the

October 20, 2009 notice (recorded October 21, 2009).  FAC, Ex. 4 (Ex. U (docket #33), pp. 4-5).

The next day on April 23, 2010, Regional issued a new Notice of Default and Election to Sell

setting a foreclosure sale on August 30, 2010 (Trustee's Sale No. 09-FMB-94646), based on

plaintiffs' default by failing to make payments since July 1, 2009, in the increased amount of

$16,822.68.  FAC, Ex. 7 (Ex. U, pp. 2-3).  As in the earlier Notice of Default, no reference is

made to One West.

7 - FINDINGS AND RECOMMENDATIONS

On June 25, 2010, plaintiffs responded with a "Nice Offer and Demands" (Complaint, Ex. T), giving defendants an "opportunity to prove they were Creditors and to Prove they were not engaged in fraud and racketeering." *Id*, p. 5. After receiving no response to that missive, plaintiffs filed this case on July 21, 2010.

At the hearing on the first round of motions to dismiss on October 25, 2010, the parties advised that the foreclosure sale did not occur. At that same hearing, plaintiffs made it clear that they do not seek a loan modification, but seek to obtain title to their property free and clear of the Note and Deed of Trust and declined the assistance of an attorney.

## **FINDINGS**

Each defendant seeks to dismiss plaintiffs' FAC with prejudice because it fails to state a claim for relief. In addition, out of an abundance of caution, Tomkinson again moved to dismiss for lack of personal jurisdiction. However the FAC does not individually name Tomkinson as a defendant, and plaintiffs aver that they are no longer bringing claims against Tomkinson. Memorandum in Opposition to Defendant Impac Funding Corporation's Motion to Dismiss First Amended Complaint (docket #112), p. 2. Thus, Tomkinson's motion to dismiss should be denied as moot.

Although the court must construe their pleadings liberally, *pro se* litigants must comply with the Federal Rules of Civil Procedure. *Ghazali v. Moran*, 46 F3d 52, 54 (9th Cir 1995), citing *King v. Atiyeh*, 814 F2d 565, 567 (9th Cir 1987). Even "a liberal interpretation of a . . . complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F2d 266, 268 (9th Cir 1982).

In its prior Findings and Recommendation (docket # 85), this court warned plaintiffs that the Complaint violated both FRCP 8 and 12. The FAC is an improvement, but still falls short of fully complying with FRCP 8 and 12. Having given plaintiffs one opportunity to replead, this court should not give them another opportunity, but instead should attempt to interpret the claims as pled in the FAC.

## I. <u>Fraud in the Inducement (First Claim) and Unjust Enrichment (Fourth Claim)</u>

The First and Fourth Claims allege that plaintiffs were fraudulently induced into executing the Note and Deed of Trust, never in fact received a loan from Impac, and later made numerous payments to One West based on the loan they never received. These claims are related and will be considered together.

### A. <u>Fraud in the Inducement (First Claim)</u>

#### 1. <u>Allegations</u>

The First Claim is titled "Fraud in the Inducement - Plaintiffs never received a loan from [Impac] in which to be in default of." FAC, p. 4. This claim is premised upon two allegedly wrongful actions, namely (1) the insertion of an "alias" into the Note and Deed of Trust and (2) the failure of Impac to actually provide the loan proceeds to plaintiffs. The thrust of the first contention seems to be the Deed of Trust lists listed the "Borrower" as "ROGER L TABB AND SANDRA S TABB, AS TENANTS BY THE ENTIRETY, as an alias." FAC, ¶ 32. Plaintiffs contend that their true legal names are "Roger Lynn Tabb" and "Sandra Scott Tabb," not "Borrower" and not "ROGER L TABB AND SANDRA S TABB, AS TENANTS BY THE ENTIRETY." *Id*, ¶¶ 35-36. Thus, they do not believe that they were ever lent anything by, or borrowed anything from, Impac, including $404,000.00. *Id*, ¶¶ 37-40. Apart from the dispute

over their correct monikers, plaintiffs also appear to contend that they did not personally receive

any of the loan proceeds.

### 2. __Analysis__

The elements of a fraud claim under Oregon law are:

> (1) a misrepresentation; (2) its falsity; (3) its materiality; (4) the speaker's
> knowledge of its falsity or ignorance of its truth; (5) his intent that it
> should be acted on by the person and in the manner reasonably
> contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on
> its truth; (8) his right to rely thereon; (9) and his consequent and proximate
> injury.

*Estate of Schwarz v. Philip Morris Inc.*, 206 Or App 20, 38-39, 135 P3d 409 (2006), *aff'd* 348 Or

442, 235 P3d 668 (2010), quoting *Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or 332,

350, 225 P2d 757, 764 (1950).

### 3. __Legal Standard for Fraud Claim__

Under FRCP 9(b), "the circumstances constituting fraud or mistake shall be stated with

particularity." The Ninth Circuit requires the pleader to state the time, dates, places, benefits

received, and other details of the alleged fraudulent activities. *Neubronner v. Milkin*, 6 F3d 666,

672-73 (9th Cir 1993) (citations omitted). Regarding the nature of the alleged fraudulent

activities, the pleader must state the "specific content of the false representations as well as the

identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture*

*Co., Inc.*, 806 F2d 1393, 1401 (9th Cir 1986) (citations omitted). And in a case involving

multiple defendants, "a plaintiff must, at a minimum, 'identify the role of each defendant in the

alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F3d 756, 765 (9th Cir 2007), quoting

*Moore v. Kayport Package Exp., Inc.*, 885 F2d 531, 541 (9th Cir 1989) (internal brackets

omitted).

A fraud claim must be brought within two years of the discovery of the fraud.

ORS 12.110(1).  "For purposes of that statute, a plaintiff 'discovers' the fraud 'when the plaintiff

knew or reasonably should have known of the alleged fraud.'" *Bell v. Benjamin*, 232 Or App 481,

486, 222 P3d 741, 744 (2009), quoting *Mathies v. Hoeck*, 284 Or 539, 542-43, 588 P2d 1, 2-3

(1978).  A two step analysis determines whether that standard is met:

> Whether the plaintiff should have known of the alleged fraud
> depends on a two-step analysis.  First, it must appear that plaintiff
> had sufficient knowledge to excite attention and put a party upon
> his guard or call for an inquiry.  If plaintiff had such knowledge, it
> must also appear that a reasonably diligent inquiry would disclose
> the fraud.  Whether or not the plaintiff should have known of the
> fraud at a particular point in time is normally a question for the jury
> except where only one conclusion can reasonably be drawn from
> the evidence.

*Mathies*, 284 Or at 542-43, 588 P2d at 3 (internal quotations and citations omitted).

### 4.  **Analysis**

Plaintiffs executed the Deed of Trust and Note on July 7 and 8, 2006, respectively.

However, it was not until "[y]ears later" that plaintiffs "began researching lender fraud and

foreclosure fraud."  FAC, ¶ 23.  At that time "[a]fter reviewing the verbiage in" the Deed of Trust

and Note, they found no evidence of any loan to them by Impac.  *Id*, ¶ 25.

In support, they first point to the substitution in the closing documents of an "alias" for

them of "Borrower," defined as "ROGER L TABB AND SANDRA S TABB, AS TENANTS

BY THE ENTIRETY."  This claim is spurious.  Plaintiffs do not deny executing the Note and

Deed of Trust, and they did so by signing "Roger L Tabb" and "Sandra S Tabb" to those

documents.  FAC, Exs. 1 & 9.  To the degree they premise their fraud on the alleged substitution

of an "alias" into the documents, they knew or should have known of the substitution of an alias

on July 7 and 8, 2006, when they executed those documents.  Accordingly, to the extent the fraud

claim is premised upon the substitution of an alias in the Note and Deed of Trust, the First Claim

is clearly time barred because it was filed on July 21, 2010, more than three years after plaintiffs

executed the Note and Deed of Trust.

     Plaintiffs also allege that they were never lent the $404,000.00 referenced in the Note and

Deed of Trust.  FAC, ¶¶ 37-42.  In particular, they allege that the Note is written in the past tense

("In return for a loan that I have received, I promise to pay U.S. $404,000.00") and that "at no

time [did they] personally receive a check or a deposit into their checking account for the amount

of $404,000.00 by IMPAC FUNDING."  FAC, ¶ 42(d) & (f).  They contend that "[a]t best,"

Impac "loaned Plaintiffs their own credit" and "caus[ed] Plaintiffs to believe they must sign the

Deed of Trust in order to obtain their home."  Plaintiffs' Memorandum in Opposition to

Defendant Impac Funding Corporation's Motion to Dismiss First Amended Complaint (docket

#112), p. 3.  This allegation of fraud is also clearly time-barred.  Plaintiffs have offered nothing

to counter the conclusion that they knew or should have known that they did not receive the

benefit of the moneys referenced in the Note at the time they executed the loan documents.

     It appears that plaintiffs may be attempting to allege that Impac committed fraud after

July 2006 by later transferring the Note and Deed of Trust to One West without their knowledge

and consent.  Any such claim would require an allegation that in July 2006 when plaintiffs signed

the Note and Deed of Trust, Impac misrepresented to plaintiffs that it would not sell, assign or

transfer the Note or Deed of Trust without their prior consent, thereby causing damage to

plaintiffs.  Plaintiffs make no such allegation, nor could they.  Paragraph 20 of the Deed of Trust

expressly allows a sale of the Note "one or more times without prior notice to Borrower" and

nothing in the Deed of Trust bars a transfer without the borrower's consent.

Even were the fraud claim not time-barred, it also fails to allege any act of fraud by any

defendant other than Impac.  The only allegation in the First Claim referencing the remaining

defendants states in conclusory fashion that defendants acted in concert to induce plaintiffs to

enter the mortgage transaction which had little or no benefit to plaintiffs.  FAC, ¶¶ 43-44.  Such

conclusory assertions are insufficient to support a fraud claim.  Again, by failing to specifically

allege the who, what, when, where and how of the alleged misrepresentations, plaintiffs fail to

state a fraud claim.  This court previously cautioned plaintiffs that a fraud claim must be based

on some misrepresentation made to them to induce them to sign the Note and Deed of Trust, and

not on some defect in subsequent paperwork in which they were not involved and had no prior

knowledge.  Otherwise, they cannot prove that they reasonably relied on the alleged defect when

obtaining their loan from Impac.  Thus, the First Claim should be dismissed as to all defendants.

### B.  **Improper Pecuniary Gain (Fourth Claim)**

The Fourth Claim dovetails with the First Claim in that it is premised upon plaintiffs

making "numerous payment to [One West] for a loan Roger Lynn Tabb and Sandra Scott Tabb

never received from [Impac]."  FAC, ¶ 81.  Because they "never received" a loan from Impac,

plaintiffs contend that One West received improper pecuniary gain.  *Id*, ¶ 82.  Although not clear,

plaintiffs also may allege this claim against IndyMac which merged with One West in March

2009.  *Id*, ¶ 83.

Plaintiffs concede that this claim must be dismissed as against Impac  "if [Impac] can provide proof that a conversion of this instrument into collateral for a [Mortgage Backed Security] pool did not happen . . . ."  Opposition, p. 4.  However, it is not Impac's burden to provide that proof.  Instead, plaintiffs carry the burden to allege sufficient factual allegations to overcome dismissal.  They have not done so.

The essence of the Fourth Claim is that One West was unjustly enriched by plaintiffs' payments on a nonexistent loan.  However, the only contentions made by plaintiffs in support of that assertion are the same meritless ones made to support the First Claim, namely that plaintiffs were duped into signing loan documents under an "alias" and that they never received a check or bank deposit of the loan proceeds.  Therefore, the Fourth Claim should be dismissed as to all defendants.

## II.  FDCPA Violation (Third Claim)

The Third Claim alleges a violation of the FDCPA.  Impac, as the original lender, is not considered a "debt collector."  *See* 15 USC § 1692a (6)(a) (term "debt collector" does not include officers or employees of the creditor, while in the name of the creditor, collecting debts for such creditor).  Therefore, Impac cannot be held liable for violating the FDCPA.

With respect to the remainder of the FDCPA claim, plaintiffs contend that defendants failed to "validate" the debt allegedly owed by plaintiffs prior to initiating foreclosure, an apparent reference to 15 USC § 1692g (concerning validation of debts).  On December 24, 2009, plaintiff Roger Lynn Tabb executed a Cease and Desist Foreclosure Sale Notice Lawful Debt Validation Demand ("Validation of Debt letter") addressed to Regional, Ticor, One West, IndyMac, MERS, and Impac.  FAC, Ex. 8.  That document alleges that fraud was committed

against him by Regional, and seeks answers to 198 questions designed to aid him in examining and auditing his loan. *Id*. The Third Claim contains a multitude of assertions about the effect and meaning of various statutory provisions and terms and asserts that plaintiffs have "seen no evidence" that certain legally-significant occurrences have not taken place, implying that defendants must somehow prove that those events have not occurred. However, the essence of their FDCPA claim is that defendants failed to respond to Roger Lynn Tabb's Validation of Debt letter. FAC, ¶¶ 57-58, 78-79.

Merely foreclosing on a property pursuant to a deed of trust "is not the collection of a debt within the meaning of the FDCPA," *Hulse v. Ocwen Fed. Bank, FSB*, 195 F Supp 2d 1188, 1204 (D Or 2002). Therefore, plaintiffs "may not maintain any FDCPA claims based on alleged actions made in pursuit of the actual foreclosure." *Id*. This court discerns no other challenge to defendants' actions apart from their efforts (whether wrongful or not) to foreclose on the Deed of Trust. Accordingly, the Third Claim should be dismissed with prejudice not only against the moving defendants, but *sua sponte* against all named defendants.

## III.  <u>Wrongful Foreclosure (Second Claim)</u>

### A.  <u>No Pending Foreclosure</u>

The two Notices of Default and Elections to Sell set foreclosure sale dates of February 24 and August 30, 2010 respectively. However, it is undisputed that no foreclosure sale ever took place.

In Oregon, a nonjudicial foreclosure sale by a trustee may be postponed "for one or more periods totaling not more than 180 days from the original sale date." ORS 86.755(2). More than 180 days has passed since the last-noticed foreclosure sale date of August 30, 2010. Because the

statutory time window has passed without a foreclosure sale, there is no existing controversy

regarding the Notice(s) of Default and Election(s) to Sell and any action based on those

documents is now moot.  *See Coley v. Accredited Home Lenders, Inc.*, 2011 WL 1193072 (ED

Ark March 29, 2011) ("Whether the Notice of Default was valid is moot because the nonjudicial

foreclosure sale described in the notice was cancelled.  Thus, [the party exercising the power to

sell] would be required by law to file a new Notice of Default and Intention to Sell before a sale

could take place."); *Sakugawa v. MERS*, No 10-00028 JMS/BMK, 2011 WL 776051 (D Ha

February 25, 2011) ("the Notice of Rescission moots Plaintiff's claims for equitable relief – there

is no existing controversy regarding the Notice of Foreclosure because it was rescinded.  In other

words, no foreclosure will occur based on the Notice of Foreclosure.  Although nothing prevents

anyone from seeking foreclosure on the subject property again . . . , any defects in that

subsequent action would give rise to a separate claim from what is alleged in the Complaint,

which is based on this particular Notice of Foreclosure.").

## B.  No "Wrongful Attempted Foreclosure" Claim Recognized in Oregon

The substance of the Second, Fifth, and Sixth Claims is that the attempted foreclosure on

plaintiff's property was wrongful.  As just discussed, no foreclosure sale ever took place, and no

foreclosure is pending at this time.  Oregon recognizes an action for "wrongful foreclosure"

brought post-foreclosure.  *See Staffordshire Investments, Inc. v. Cal-Western Reconvenyance

Corp.*, 209 Or App 528, 149 P3d 150 (2006).  However, Oregon does not recognize a claim for a

wrongfully *attempted* foreclosure:

> If the foreclosure process had not been aborted prior to sale,
> plaintiffs could possibly pursue a claim for wrongful foreclosure
> under Oregon's nonjudicial foreclosure statutes based on the

> invalid assignment allegations.  Without an actual foreclosure,
> however, it may be that plaintiffs have no remedy for the alleged
> initiation of the foreclosure process by the wrong entity.

*Hulse*, 195 F Supp2d at 1204 n5.

Oregon law is in accord with "the overwhelming majority of states" which do not recognize a claim for wrongful attempted foreclosure.  *Santos v. Countrywide Home Loans*, 2009 WL 3756337 at *3 (ED Cal Nov 6, 2009).  Therefore, the Second Claim alleging a wrongful attempted foreclosure should be dismissed against all defendants.

## IV.  Quiet Title (Sixth Claim)

Plaintiffs also cannot state a claim to quiet title because it is undisputed that they own the real property.  The Deed of Trust does not affect plaintiffs' title:

> A trust deed securing the sale of property is deemed a mortgage.
> With respect to mortgages, Oregon is a "lien theory" state, meaning
> that a mortgage on real estate does not convey legal or equitable
> title or interest to the holder of the mortgage (mortgagee).  Instead,
> the mortgagee has only a lien on the property.

*Kerr v. Miller*, 159 Or App 613, 621, 977 P2d 438, 444 (1999), citing ORS 86.715 (additional citations omitted).

The dispute in this case issue is not over title, but whether the Deed of Trust is a lien that can be foreclosed against plaintiffs' property.  Liberally construing the FAC, it appears that instead of seeking to quiet title, plaintiffs seek to establish that none of the defendants should be allowed to foreclose on plaintiffs' real property nonjudicially.  In support, plaintiffs make MERS-related allegations and arguments about splitting the Note from the Deed of Trust, lack of standing to foreclose, and broken chain of title.

First of all, plaintiffs allege no claim against MERS.  The Deed of Trust names MERS as the beneficiary and as the nominee for the Lender.  FAC, ¶ 31 & Ex. 1.  According to the exhibits submitted by plaintiff, MERS assigned the Deed of Trust to One West which appointed Regional as the successor trustee.  The trustee, not the beneficiary, has the power of sale.  Plaintiffs do not even allege that MERS is an active participant in the attempted foreclosure, but instead allege that "[t]hrough "the MERS system, the Note can be assigned freely amongst its members, while the Deed of Trust remains in the name of MERS as agent for said members," which has "cloud[ed] title by circumventing the transparency of the system of public records."  FAC, ¶¶ 71-72.  However, this is not sufficient to state a claim against MERS.  As  this court has explained when denying a request to amend to add MERS as a defendant:

> While MERS is a significant player in this case, it no longer has an interest in the Deed of Trust and is not participating in the foreclosure at issue.  Therefore, it would be futile to add MERS as a defendant at this stage in the proceedings.  Further, plaintiffs are still able to challenge MERS' authority to assign the Deed of Trust without adding MERS as a defendant.

*Thomas v. One West Bank, FSB*, 2011 WL 867880 at *8, Case No. 6:10-cv-6234-AA (D Or March 10, 2011).

Second, plaintiffs misconstrue the applicable law.  Plaintiffs appear to believe that absent any recorded assignment of their Note from Impac to the foreclosing lender (presumably US Bank) or its loan servicing agent (One West), their Note and Deed of Trust have been "split," such that neither can be enforced.  However, under Oregon law, 'a promissory note secured by a mortgage on real property [can be] transferred by indorsement without a formal assignment of the mortgage." ORS 86.110(1); *see also* ORS 86.715 (mortgage statutes apply to trust deeds).  In

18 - FINDINGS AND RECOMMENDATIONS

addition, the trust deed follows the note, so whoever holds the note also has power to foreclose

the trust deed.  In *Barringer v. Loder*, 47 Or 223, 81 P 778 (1905), the Oregon Supreme Court

affirmed a foreclosure judgment for the plaintiff, to whom the note had been indorsed and to

whom both note and mortgage had been delivered, even though no transfer of the note and no

assignment of the mortgage had been recorded.  *Id* at 227-29, 81 P at 780.  *See also Schleef v.*

*Purdy*, 107 Or 71, 78, 214 P 137, 140  (1923) ("A mortgage given as security for the payment of

a note may be transferred . . . by the indorsement of the note and the surrender of its possession . .

. and this transfer of the note, without any formal transfer of the mortgage, transfers the

mortgage.") (citations omitted).

It also does not matter that MERS (and not Impac) was the original beneficiary of

plaintiffs' Deed of Trust.  As this court has concluded in other cases, MERS can act as a

beneficiary of the trust deed even if it is not the holder of the note, and the trust deed can be

foreclosed even if the note and trust deed are not held by the same entity.  *Beyer v. Bank of Am.*,

Case No. 10-cv-523-MO, slip op., pp. 4-8 (D Or Aug. 1, 2011); *see also James v. Recontrust*

*Co.*, Case No. 3:11-CV-324-ST, Findings and Recommendation dated August 26, 2011 (docket

#41), pp. 12-22.  Thus, plaintiffs do not state a viable claim to prevent foreclosure of the Deed of

Trust based on any failure to record the Note or to record any transfers of the Deed of Trust prior

to the assignment by MERS to One West and One West's appointment of Regional as the

successor trustee.

///

///

///

19 - FINDINGS AND RECOMMENDATIONS

## V. **Injunction (Fifth Claim)**

Because the other claims should be dismissed, as discussed above, plaintiffs have no likelihood of succeeding on the merits and, thus, are not entitled to an injunction as requested in the Fifth Claim.

### RECOMMENDATIONS

For the reasons set forth above:

(1)  Defendants Impac Funding Corporation and Joseph R. Tomkinson, Chairman and CEO's Motions to Dismiss Plaintiffs' First Amended Complaint (docket #104) should be DENIED AS MOOT as to "Motion #2" (Tomkinson's precautionary motion) and GRANTED in all other respects (as to "Motion #1");

(2)  Defendants One West and MERS's Motion to Dismiss First Amended Complaint (docket #107) should be GRANTED;

(3)  Defendant US Bank National Association's Joinder in Motion to Dismiss First Amended Complaint (docket #117) should be GRANTED;

(4) FDIC's Motion to Dismiss and Joinder in Other Motions to Dismiss (docket #128) should be GRANTED; and

(5)  All claims against all defendants should be DISMISSED WITH PREJUDICE.

Accordingly, plaintiffs' Motion for Entry of Default Judgment (docket #114) should be DENIED AS MOOT.

///

///

///

20 - FINDINGS AND RECOMMENDATIONS

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due September 12, 2011.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations do not constitute an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED this 26th  day of August, 2011.

s/ Janice M. Stewart____
Janice M. Stewart
United States Magistrate Judge